Chief Judge Breitel.
 

 In a workmen’s compensation matter, the employer and its insurance carrier appeal. The Appellate Division had affirmed a decision of the Workmen’s Compensation Board holding the carrier liable, in a proceeding in which the carrier had unsuccessfully sought to shift liability to the Special Fund for Reopened Cases (Workmen’s Compensation Law, § 25-a).
 

 
 *368
 
 The issue is whether a workmen’s compensation award on an initial formal claim, arising from a 1960 injury, but where there had been more recent voluntary payments or benefits to the employee on account of the injury or accident, is chargeable ultimately to the Special Fund for Reopened Cases.
 

 There should be an affirmance. The Workmen’s Compensation Law, in pertinent part, provides for Special Fund liability "after a lapse of seven years from the date of the injury * * * and also a lapse of three years from the date of the last payment of compensation” (§ 25-a, subd 1). The statute by its terms creates a Special Fund for "reopened” cases in order to shift liability from the original carrier and employer to a fund specially financed (Workmen’s Compensation Law, § 25-a, subd 3). Nevertheless, there is no express requirement that there has been a formal opening of a claim or a prior formal award. Moreover, at least in the case of "stale” initial claims, that is, claims arising from old injuries without there ever having been a formal opening or award, it is consistent with the statute’s objective to shift liability to the Special Fund for an old accident and dormant compensation matter. In the instant case, however, although seven years have elapsed since the claimant’s accident or injury, the fund is not liable because the employer made advance payments of compensation within three years of the present formal claim.
 

 On September 1, 1960, claimant suffered a work-related back injury while in the employ of Aircraft Products Manufacturing Corporation. Although he received treatment at that time, claimant was not absent from work because of the injury until the 1965-1970 period, when he missed a total of 10 days. During the 1965-1970 absences he received sick pay from the employer pursuant to union contract and consequently did not seek or obtain formal workmen’s compensation benefits. Also, in the summer of 1970, there were five weeks of lost work, including a vacation period. During the 1970 absences claimant received sick pay, as well as regular vacation pay from his employer.
 

 Recognizing claimant’s continuing disability his employer assigned him "light work” from September, 1970 to April 18, 1971. He received the regular rate of pay but his hours were reduced. Finally, on April 18, 1971, claimant’s back injury had deteriorated to the point where he was totally disabled. Only then did he file his initial formal claim for workmen’s compensation in June of 1971.
 

 
 *369
 
 The Workmen’s Compensation Board affirmed a referee’s decision finding a work-related disability and that the employer’s payment of wages during the disability was an advance payment of compensation made within three years of the claim, and, hence liability was not chargeable to the Special Fund. The Appellate Division, in an unanimous memorandum, affirmed on the ground that an initial award, regardless of how long ago the industrial accident occurred, was not payable out of the Special Fund for Reopened Cases.
 

 The employer does not now dispute that the accident occurred or contend that there was a failure to file a timely claim. Rather, the employer and its insurance carrier contend that liability for this initial claim is properly chargeable to the Special Fund for Reopened Cases because it is "stale”, having been made over 11 years after the accident.
 

 Special Fund liability is provided for "after a lapse of seven years from the date of the injury * * * and also a lapse of three years from the date of the last payment of compensation” (Workmen’s Compensation Law, § 25-a, subd 1, par [2]). Putting aside for the moment any payment of formal compensation within three years, this provision has been found to impose liability on the Special Fund in "stale” initial claim cases like the instant one (see, e.g.,
 
 Matter of Gallahan v Papec Mach. Co.,
 
 288 NY 726;
 
 Matter of Stewart v First Nat. City Bank of N. Y.,
 
 15 AD2d 622, mot for lv to app den 11 NY2d 645). These holdings are consistent with the purpose as well as the language of section 25-a. The purpose of section 25-a is to save employers and insurance carriers from liability, it has been said, for " 'stale’ claims of injured employees, that is, those where after extended periods, there has been a recurrence of malady, a progress in disease not anticipated, or a pathological development not previously prognosticated, arising out of the injury”
 
 (Matter of Ryan v American Bridge Co.,
 
 243 App Div 496, 498).
 

 All of this notwithstanding, the Appellate Division concluded, in effect although not in so many words, that this was a compensation case opened but never closed and hence could not be charged as a "reopened case” to the Special Fund. That court’s conclusion was expressly based on language in
 
 Matter of Casey v Hinkle Iron Works
 
 (299 NY 382).
 

 In
 
 Matter of Casey,
 
 a matter where there had been a prior award after which the matter had been placed in "abeyance”, the court held that the case had really been closed. The court
 
 *370
 
 then added that Special Fund liability "may be imposed only in a case which has been closed and is reopened by fresh application” (at p 385; cf.
 
 Matter of Kiriloff v A. G. W. Wet Wash Laundry,
 
 293 NY 222, 228). The holding conformed with the statute since it, undisputedly, creates a Special Fund for "reopened cases” (Workmen’s Compensation Law, § 25-a, subd 3).
 

 The language of the statute, however, does not expressly condition Special Fund liability on there having been a prior formal "opening” in the form of a filing of a formal claim to the Workmen’s Compensation Board (Workmen’s Compensation Law, § 25-a, subd 1, par [2]; compare Workmen’s Compensation Law, § 25-a, subd 1, par [1] [where the use of the word "claim” suggests that prior formal disposition is required]). True, "the last payment of compensation”, a phrase used in the pertinent part of subdivision 1 of section 25-a, is defined to mean "the date of actual payment of the last installment of compensation previously awarded” (Workmen’s Compensation Law, § 25-a, subd 7). This does not, however, mean that a prior formal opening or award is a prerequisite for holding the Special Fund liable for stale "initial” claims. At least, this has been the uniform construction and practice for many years.
 

 Where, as in the instant case, there have been voluntary payments in advance of compensation, the payments are in effect an "informal” award. Indeed, this is borne out by the fact that these voluntary payments are treated much like formal awards, in that they may be reviewed by the board at a hearing at any time (Workmen’s Compensation Law, § 28). Cases involving voluntary payments are therefore in a sense "closed” when these payments are terminated, and the subsequent formal filing of the stale "initial” claim is in effect a "reopening” of the case. Hence, the reference in
 
 Matter of Casey
 
 to "reopened” cases, should not be read restrictively, in contradiction of the earlier and abiding rule, to apply to cases involving stale initial claims where there have been advance payments of compensation (see, e.g.,
 
 Matter of Gallahan v Papec Mach. Co.,
 
 288 NY 726,
 
 supra; Matter of Erne v Ritter Co.,
 
 17 AD2d 668;
 
 Matter of Stewart v First Nat. City Bank of N. Y.,
 
 15 AD2d 622,
 
 supra).
 

 Confusion has arisen because courts have quite properly measured the time elapsed from "the last payment of compensation” to include any voluntary advance payments of compensation by an employer. In effect such payments have been
 
 *371
 
 considered as tolling the three-year time period under section 25-a without regard to the fact that such payments were not made pursuant to a formal award (see, e.g.,
 
 Matter of Schmitt v Alpha Delta Phi Fraternity House,
 
 33 AD2d 1082;
 
 Matter of Golomb v City of New York,
 
 8 AD2d 874, 875).
 

 Initial stale claims, therefore, are to be measured from the last payment of compensation in accordance with the statutory language. This follows, if one treats voluntary advance payments as equivalent to formal payments of compensation by award, as the teaching of the cases requires (see, e.g.,
 
 Matter of Gallaban v Papec Mach. Co.,
 
 288 NY 726,
 
 supra; Matter of Tulley v American Radiator & Std. Sanitary Corp.,
 
 8 AD2d 564). Thus, where initial claim is made after seven years from the date of injury (or accident) and three years from the last voluntary advance payment of compensation, if any, the Special Fund is liable.
 

 In the instant case, however, while the first statutory requirement is met, that is, more than seven years have elapsed since the accident, the employer or its successor corporations have made advance payments of compensation within three years of the date of claim. Since this determination of the board is supported by substantial evidence it may not be disturbed in judicial review
 
 (Matter of Holmes v McCampbell,
 
 39 AD2d 624, 625; cf.
 
 Matter of Reeves v Pfizer & Co.,
 
 22 NY2d 950, 952). Hence, the Special Fund is not liable in this case because the employer made advance payments of compensation within three years of the claim.
 

 The employer, Aircraft Products Manufacturing Corporation, and its insurance carrier, Empire Mutual Insurance Company, contend that even if advance payment of compensation had been made, it was made by a different corporate employer which may not bind a former employer and its insurance carrier. The argument is based on the fact that Aircraft Products had ceased operation, having been succeeded first by Hydra Power Corporation and then by Teledyne Hydra Power, now a division of Teledyne, Inc. The Workmen’s Compensation Board found, based on testimony at the hearing, that the later employers were successor corporations which had absorbed Aircraft Products as a subsidiary. As such, Aircraft Products’ liability, ultimately that of its insurance carrier, for any compensation award, was assumed by the successor corporations (see Business Corporation Law, § 906, subd [b], par [3]).
 

 
 *372
 
 Accordingly, the order of the Appellate Division should be affirmed, without costs.
 

 Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur; Judge Cooke taking no part.
 

 Order affirmed.